**618**

William Earl **STEWART**

v.

**Carl R. RENG, Pres. of Ark. State Univ., Robert Moore, Dean of Students of A. S. U., Van Smith, William Wyatt, Max Poe and Russell Owen, Trustees of A. S. U., and James E. Griner, Donald R. Minx, and Evelyn Prescott, constituting the Student Disciplinary Committee of Ark. State University.**

**No. J–69–C–44.**

United States District Court,
E. D. Arkansas,
Jonesboro Division.

Nov. 19, 1970.

Burl Rotenberry, Little Rock, Ark., for plaintiff.

Berl Smith, Jonesboro, Ark., Henry Ginger, Asst. Atty. Gen. for Arkansas, Little Rock, Ark., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW RE TEMPORARY INJUNCTION

EISELE, District Judge.

In this action plaintiff seeks monetary damages from the defendants and equitable relief. The action at law for damages was tried to a jury at the same time that the suit for equitable relief was tried to the Court. The jury, after deliberating approximately seven hours, returned the following verdict:

"We, the jury, find the factual issues submitted to us in favor of the defendants and against the plaintiff, and further find the plaintiff not entitled to nominal, compensatory or actual damages."

The action at law was submitted to the jury upon various instructions, among which is the following, which is quoted here because of the relevance to the issues in the action for equitable relief:

You are instructed that Arkansas State University has the authority to promulgate reasonable rules and regulations governing the conduct of the students attending that institution and that under its rule requiring be-

havior compatible with good citizenship and prohibiting conduct unbecoming a student, it could properly suspend a student found to have knowingly and willingly participated in a party at which marijuana was being used in violation of law even though that student did not personally possess or use marijuana. On the other hand, the University would not be permitted to discharge a student who attended and participated in such a party unwittingly and without any knowledge or awareness that marijuana was present on the premises or being used by others in attendance at the party.

You are further instructed that before a university may suspend a student for the violation of its rules and regulations it must afford that student certain minimum procedural safeguards, in order to meet the due process requirements of our nation's Constitution. Among these procedural requirements are adequate notice of the charge against him and an opportunity for a fair hearing upon such charges. Here it is undisputed that the University failed in certain respects to provide the plaintiff, William Stewart, with certain of these procedural safeguards and there is a question of fact as to whether it afforded him other such safeguards. The composition of the hearing panel was inadequate under constitutional standards because its chairman, who was also one of its members, participated in the hearing as a witness. It is also undisputed that the plaintiff was not afforded the opportunity to be confronted by the witnesses and the evidence against him. The only two "witnesses" at the hearing were Dr. Hazelbaker and Dean Moore, and the information which they gave to the Disciplinary Committee was given outside of the presence of the plaintiff and plaintiff was not advised of the nature of such evidence. It is undisputed that none of the other witnesses, such as the police officers who testified in this case, were present at or tified in this case, were present at or participated in the disciplinary hearing. The failure to provide the required impartial hearing panel and the failure to provide the plaintiff with an opportunity to know of, and to meet, the evidence against him and to confront the witnesses against him constituted violations of the plaintiff's constitutional right to procedural due process. Whether such violations of his constitutional rights caused or occasioned any damages to the plaintiff is for you to determine.

There is a question of fact as to whether the plaintiff's right to adequate notice of the hearing and adequate specificity of the charges made against him were given. Dean Moore testified he advised the plaintiff while he was at the police station on the night before the hearing that he was suspended for conduct unbecoming a student and that he would have a right to a hearing before the Disciplinary Committee to be conducted some time the following day. The plaintiff denies that Dean Moore provided him with such notice and information. It is for you to determine whether adequate notice and adequate specificity of the charges against the plaintiff were given to him prior to the hearing conducted January 26, 1967. If not, then such failure would constitute additional violations of the plaintiff's constitutional right to procedural due process.

Whether the undisputed violations of the plaintiff's constitutional rights, or other violations thereof which you may find, caused or occasioned any damage to him is a matter solely for your determination.

You are instructed that. you may find nominal damages in favor of the plaintiff based upon the undisputed violation of the plaintiff's right to procedural due process or based upon other violations of such other rights as you may find. However, to award the plaintiff actual damages which he is seeking in this proceeding you must determine that those damages were in

fact caused or occasioned by the violation of his said constitutional rights. In this connection you must analyze the evidence presented and determine to your own satisfaction what the result of the disciplinary proceeding would have been had it been conducted in full compliance with the plaintiff's right to procedural safeguards.

You must answer the question: would plaintiff have been suspended, even if he were afforded every procedural safeguard? If you answer this in the affirmative, plaintiff is not entitled to actual or compensatory damages; if you answer this in the negative, you may award damages in the amount that you believe will fairly compensate him for his actual losses, if any.

It will be noted that the Court concluded, prior to submitting the case to the jury, that certain of the plaintiff's rights to procedural due process had been violated by the defendants. More particularly, defendants did not provide an impartial hearing officer or hearing panel, nor did they give the plaintiff an opportunity to know of and meet the evidence offered against him or to confront the witnesses against him. The Court left it to the jury to determine whether the plaintiff had adequate notice of hearing or adequate specificity of the charges against him.

On the merits the Court is of the opinion that a properly constituted and impartial hearing tribunal or hearing officer could have found for or against the plaintiff on the central factual issue, to-wit: did the plaintiff knowingly and willingly participate in a party composed of fellow students and faculty members at which marijuana was being used in violation of the law, or did the plaintiff attend and participate in this party without any knowledge or awareness that marijuana was present on the premises or being used by others in attendance at the party?

According to the plaintiff's testimony, he had only met the host at the party some two days earlier, was not invited to the party by the host, but only went because of the importuning of his date and a fellow student. According to his testimony the party was a "typical" student gathering and nothing that happened during the evening made him in any way believe or suspect that marijuana was present on the premises or being used by any of the people at the party. On the other hand, there was circumstantial evidence from which a hearing tribunal or officer could have found to the contrary. Officers of the state, the county, and the city, as well as university officials, had the location of the party under surveillance for about an hour before they conducted a raid upon the premises. During this period a student informer went into the apartment and, according to the police, purchased some marijuana and then left. The law enforcement officials then obtained a search warrant and conducted the raid. During the search they found concealed in various places about the apartment a substantial quantity of marijuana. In the large ash tray in the center of a circle of students they found several "roaches," which are the small butts of marijuana cigarettes. An analysis of these proved that they did contain marijuana. Naturally, there was no way to know how long they had been in the ash tray, but the officers, some of whom had special training in this area, testified that there was a strong odor of marijuana in the smoke-filled rooms when they entered the apartment. They testified that this odor resembled that from the burning of leaves and described same as "acrid." No one testified that a person unfamiliar with the odor would have distinguished it as marijuana, but the implication was that one should have suspected that it was not cigarette or cigar smoke. There was further testimony that the plaintiff's eyes were "glazed" and that his behavior was peculiar. At the police station where he was taken about an hour after the raid the plaintiff got sick and was taken to the hospital or infirmary. The plaintiff testified when he was first on the stand that he

suffered from a nervous condition for which his doctor had prescribed tranquilizers and he readily admitted that he was nervous and upset by the events and became sick. The doctor who attended him refilled his prescription for the tranquilizers. The testimony was undisputed that the plaintiff was practically a model student and citizen prior to the events referred to above. He had had an exceptional record at his high school and received a full scholarship to Arkansas State University together with a National Defense Loan. The Rotary Club of his home town awarded him $500 on the basis of his citizenship and scholarship for the purpose of pursuing his education. The written report of Dean Moore, setting forth the conclusions of the Disciplinary Committee, contained, *inter alia*, the observation that some of the eleven students who were dismissed at the hearing might have been "suckers" in not being fully aware of what was going on.

From all the above, it can be seen that an impartial hearing tribunal could have found either way upon the substantive issue concerning the plaintiff's knowledge of the presence or use at the party of marijuana in violation of the law. Technically, the plaintiff was discharged for conduct unbecoming a student at Arkansas State University or, in the language of its rule governing student conduct, for behavior not "compatible with good citizenship." Rules such as this have been upheld in similar contexts by the Court of Appeals for this circuit. See Esteban v. Central Missouri State College, 415 F.2d 1077 (1969).

The plaintiff seeks an order requiring the defendants to " * * * expunge, erase and remove from plaintiff's transcript and all other permanent school records all references to his suspension and all references to the facts, circumstances and proceedings surrounding it * * *."

Because the defendants did not provide plaintiff with a hearing compatible with the constitutional requirements for procedural due process, and because the Court is of the opinion that at a properly conducted hearing, a fairly constituted hearing tribunal could find the plaintiff innocent or guilty of the charge upon the basis of all the facts presented, a temporary injunction has been issued in favor of plaintiff, dated November 18, 1970, a copy of which is attached, which will have the effect of restraining the defendants from disclosing to anyone, without plaintiff's permission, those of its records which relate in any way to the suspension of the plaintiff from Arkansas State University, unless and until it conducts a further hearing in accordance with the requirements of the Constitution, and it is further concluded that the suspension of the plaintiff on January 26, 1967, was warranted and was the correct decision. The temporary injunction grants the defendants 30 days from the date thereof within which to decide whether it wishes to conduct such a hearing to ultimately determine whether the record of plaintiff's suspension in January, 1967, should be maintained as an official record of the University. If notice of defendants' intention to conduct such further hearing is not filed with the clerk of this Court within 30 days of the entry of the temporary injunction, then that injunction will become permanent and, thereupon, the defendants will expunge and remove all references to such suspension and dismissal from its records. If the defendants, within said 30-day period, file notice of their intention to proceed with a new hearing, then the Court has required that such new administrative proceeding be completed within 90 days from the date of the filing of said written notice.

Although the Court was impressed with the testimony of the plaintiff and convinced of his naivete at the time he participated in the party, at which time he was twenty years of age, the Court does not feel that it should substitute its judgment for that of the defendant institution when, admittedly, reasonable persons could reach contrary decisions upon the basis of the evidence presented.

This Court does not intend to retain jurisdiction for the purpose of supervising the new disciplinary proceeding, if any. Therefore, if defendants elect to proceed, the restraints imposed by the temporary injunction will remain in effect only until the conclusion of those administrative proceedings, which in no event can be later than 90 days from the filing of the notice by the defendants of their intention to conduct a new hearing. In such event, the temporary order will expire at such time as the administrative proceeding has been completed and the decision of the University Disciplinary Committee, or other committee selected to hear the matter, becomes final.

On the other hand, if no notice is filed within 30 days, or if the administrative proceedings are not completed within 90 days after the filing of such notice, then, in either event, the temporary injunction shall become permanent.